**PORT CONSTRUCTION COMPANY, Appellant**

v.

**GOVERNMENT OF THE VIRGIN ISLANDS**

No. 15,276

United States Court of Appeals

Third Circuit

Argued January 31, 1966

Decided May 2, 1966

*See, also, 359 F.2d 663*

---

JOSEPH A. MCGOWAN, ESQ. (CAREY, TERRY, DWYER, AUSTIN, COLE & STEPHENS), Miami, Florida, *for appellant*

FRANCISCO CORNEIRO, ESQ., Charlotte Amalie, St. Thomas, Virgin Islands, *for appellee*

Before KALODNER, *Chief Judge*, and MARIS and HASTIE, *Circuit Judges*

MARIS, *Circuit Judge*

### OPINION OF THE COURT

The plaintiff, Port Construction Company, brought this suit in the District Court of the Virgin Islands against

the Government of the Territory for declaratory and injunctive relief. The complaint sets out two separate claims for relief. The first is for a determination that the Virgin Islands gross receipts tax law, 33 V.I.C. § 43, violates the commerce clause of the Constitution and may, therefore, not be validly applied to the plaintiff. The plaintiff's second claim for relief is for a determination that under a proper construction of the Virgin Islands industrial incentive law in force on February 2, 1960, 33 V.I.C. (1958 Supp.) § 4052, it was entitled to have its application for exemption from taxation made under that law granted. The district court, after hearing, dismissed the complaint on December 31, 1964. 5 V.I. 105, 237 F.Supp. 486. Following the denial of its motion for a new trial the plaintiff took the appeal which is now before us.

We consider first the plaintiff's attack upon the constitutionality of the gross receipts tax law. That attack is three-pronged. The plaintiff first asserts that the law is invalid on its face because it imposes the tax upon all gross receipts from business done both within and without the Territory, without making any provision for apportioning the tax to receipts from intraterritorial business only. The plaintiff does not assert, however, that receipts from any of its business outside the Virgin Islands are being subjected to the tax. The facts are that it is a Florida corporation engaged in the general construction business there and elsewhere. On September 4, 1959 it entered into a contract with the Virgin Islands Housing and Urban Renewal Authority for the construction of the Oswald E. Harris Housing Project in St. Thomas. After qualifying as a foreign corporation under the local law to do business in the Territory the plaintiff proceeded with the work called for by its contract. The plaintiff having failed to file reports and pay the tax upon its gross receipts imposed by the statute in question, the Territorial Commissioner of

Finance made an assessment of the taxes estimated to be due based upon the amounts received by the plaintiff under its contract with the Authority. It will thus be seen that the plaintiff has not itself been injured by what it asserts is the unconstitutional breadth of the statute.

■ It may well be, therefore, as the Government argues, that the plaintiff lacks standing to attack the constitutionality of the statute. We are clear, however, that in any event there is no merit in the plaintiff's contention that the statute is unconstitutional on its face. So far as here pertinent 33 V.I.C. § 43, in 1961 when this complaint was filed, provided:

"(a) All persons engaged in business, including those trading in articles, goods, merchandise or commodities shall report their gross receipts and pay a tax of one (1%) per cent on the gross receipts of such business, the proceeds of which shall be covered into the General Fund of the Treasury of the Virgin Islands. . . .

"(b) The term 'gross receipts' as used in this title shall mean all receipts, cash or accrued, of the taxpayer for services or derived from trade, business, commerce or sales, and the value accruing from the sale of tangible personal property or services, or both, including rentals, fees and other involvements, however designated, without any deduction on account of the cost of the property sold, the cost of materials used, labor cost, royalties, taxes, interest or discount paid, or any other expenses whatsoever."

■ This statutory language must be considered in the light of 33 V.I.C. § 41 which provides that ". . . there shall be levied upon, collected from and paid by persons, partnerships, firms, corporations or other associations engaged in trades and other business in the Virgin Islands, the taxes hereinafter provided; such taxes to be computed in proportion to the extent of the trade carried on or of the business done, as set forth in the remaining sections of this chapter."

■■ It is an established canon of statutory construction that all the provisions of a statute upon a subject are to

be harmonized and read together so as to effectuate the purposes of the statute. And this is to be done in the light of the presumed desire and intent of the Legislature to enact a statute which is constitutional and otherwise valid. Accordingly if a statute is attacked as invalid and there is a possible construction of it which will render it valid, the courts will adopt that construction and uphold the statute. Driscoll v. Edison Light & P. Co., 1939, 307 U.S. 104, 114–115; Flemming v. Nestor, 1960, 363 U.S. 603, 617; 16 Am. Jur. 2d Constutional Law §§ 144, 146, 147; 50 Am. Jur. Statutes, §§ 357, 358. In Singer Sewing Mach. Co. v. Brickell, 1914, 233 U.S. 304, 313, the Supreme Court said:

". . . The statute under consideration does not in direct terms or by necessary inference manifest an intent to regulate or burden interstate commerce. Full and fair effect can be given to its provisions, and an unconstitutional meaning can be avoided, by indulging the natural presumption that the legislature was intending to tax only that which it constitutionally might tax. So construed, it does not apply to interstate commerce at all. The statute provides for a license or occupation tax. Normally, as the averments of the bill sufficiently show, the occupation may be and is conducted wholly intrastate, and free from any element of interstate commerce. The fact that, as carried on in Russell county, a like occupation is conducted with interstate commerce as an essential ingredient, is wholly fortuitous."

 The statute now before us does not either by direct language or necessary inference manifest an intent to tax the gross receipts from extra-territorial business. On the contrary § 41 expressly limits the tax imposed by § 43 to those "engaged in trades and other business in the Virgin Islands." It is, therefore, only the gross receipts from businesses *in the Virgin Islands* upon which § 43 imposes the tax. Subsection (b) of § 43, which defines "gross receipts" is not inconsistent with this reading of the statute. For its thrust is obviously directed to the manner of the computation of the gross receipts which are to be taxable, i.e., that

they shall be truly gross and not subject to the deduction of business expenses, and not at all to the geographical source of the receipts.

■ This construction of the statute is also supported by the interpretation which has consistently been placed upon it by the Territorial Commissioner of Finance, who has applied it only to gross receipts derived from business done in the Virgin Islands. Thus, as we have seen, the Commissioner in the present case based his estimated assessment upon the plaintiff's actual receipts from its Virgin Islands work. Such an interpretation by the agency charged with the administration of the statute is entitled to great weight. Driscoll v. Edison Light & P. Co., 1939, 307 U.S. 104, 115.

■ The plaintiff next argues that the statute prior to October 27, 1961 did not apply to building contractors engaged in the construction of public projects and in support of this argument it points to the Act of October 27, 1961, No. 781, which added to 33 V.I.C. § 43 the following additional subsection:

"(c) The provisions of this section shall apply to contractors with the Government of the Virgin Islands for public works, projects or undertakings."

While this legislative enactment did somewhat muddy the water the underlying bedrock of fact is still sufficiently clear. For we observe (1) that Act No. 781 was passed after the plaintiff by starting this suit had challenged the application of the statute to contractors such as itself, (2) subsection (a) of § 43 already included "All persons engaged in business" and contractors constructing public works projects for the Government were certainly "engaged in business", and (3) the legislative history discloses that Act No. 781 [Bill No. 1544] was intended merely to clarify the existing law and not to change it.[1]

---

[1] "Mr. Anduze: Mr. President, I should like to make some remarks on Bill No. 1544 concerning the provision relating to contractors.
"This provision is intended only to clarify what the Legislature has

The plaintiff's final contention in support of its first claim for relief is based upon another Act of October 27, 1961, this one being Act No. 780, Sess. L. 1961, p. 229. This same contention was made by the plaintiff in Jefferson Construction Overseas, Inc., Appellant, v. Government of the Virgin Islands, and has been fully considered and decided against the position taken by this plaintiff in the opinion this day filed in that case. 5 V.I. 543, 359 F.2d 668. We adhere to the position there taken and need not further discuss the matter here.

We turn then to the plaintiff's second claim for relief, which the district court also denied. By this claim the plaintiff seeks a judgment declaring that section 5 of the Act of July 5, 1957, Sess. L. 1957, p. 149, 33 V.I.C. (1958 Supp.) § 4052, which provided an industrial incentive program for the Territory, had been incorrectly construed by the Virgin Islands Board of Tax Review (Tax Exemption Board) and the Governor of the Territory to exclude the plaintiff from the benefits of tax exemption under the Act.

The Act of 1957 set up a statutory plan for attracting new capital to the Virgin Islands, for encouraging the establishment of new industries and business enterprises and for promoting and stabilizing the economy. It superseded prior statutes and municipal ordinances upon the same subject and was, in its turn, superseded on January 1, 1962, by the Act of November 3, 1961, No. 798, Sess. L. 1961, pp. 252 et seq., 33 V.I.C. (1962 Supp.) §§ 4001 et seq. Sections 5 and 12 of the Act of 1957, 33 V.I.C. (1958 Supp.) §§ 4052, 4060, provided, in part here pertinent, as follows:

"Section 5. Each person, firm or corporation engaged in the business of constructing or operating apartment houses, housing proj-

always understood the law to mean—that contractors who bring in bricks, concrete, and other materials, even if those materials are eventually made a part of a Government project, must pay the excise tax on them. That is the understanding of all of us, I believe. We are not changing the law; we are merely clarifying it." *Journal of the Legislature*, October 24, 1961, p. 20.

ects, industrial or commercial buildings, within the Virgin Islands, shall be eligible for the tax or fee exemptions and the subsidies provided for in section 6 of this Act; Provided there is a demonstrable capital investment of at least One Hundred Thousand ($100,000.00) Dollars; . . ."

"Section 12. . . . Corporations to be eligible to receive the benefits of the provisions of this Act must be organized and established under the laws of the Virgin Islands." Sess. L. 1957, pp. 149, 154.

On February 2, 1960 the plaintiff had filed an application with the Board of Tax Review (Tax Exemption Board) for tax exemption under section 5 as a corporation engaged in the business of constructing housing projects within the Virgin Islands. Thereafter the Board recommended disapproval of the application, being of the opinion that the law "contemplated tax exemption for entrepreneurs engaged in developing housing projects who invest the capital required and undertake the risks involved, and not the contractors who are engaged merely in prosecuting the construction work as a servant of the entrepreneur." The Governor concurred with the Board and disapproved the plaintiff's application for tax exemption.

The district court concluded that the Board and Governor were right in their view that Section 5 of the Act of 1957, properly construed, contemplated the granting of benefits to those who made the required capital investment in a housing project, as distinguished from those engaged to perform the actual work of construction. The district court also concluded that the exclusion of foreign corporations from the benefits of the Act of 1957 by the language of section 12 involved a reasonable classification which was within the legislative power and validly excluded the plaintiff from any benefits under the Act. Since we are clear that the district court was right in holding that section 12 validly excluded the plaintiff, a Florida corporation, from any benefits under the Act we do not reach the question of statutory construction involving section 5.

557

This, of course, is not to suggest that we think that the construction which the district court placed upon section 5 was wrong but merely that we do not need to consider the question and, therefore, do not do so.

 The plaintiff urges that section 12 of the Act of 1957 denies it the equal protection of the laws in violation of the bill of rights contained in section 3 of the Revised Organic Act, 48 U.S.C.A. § 1561. We do not agree. The Legislature of the Virgin Islands has full legislative powers limited only by the Constitution, the Revised Organic Act and other federal statutes applicable to the Virgin Islands.[2] In common with the legislatures of the several states it has the widest latitude in selecting the subjects of taxation and in granting exemptions. The equal protection clause of the Revised Organic Act which is taken from the Fourteenth Amendment imposes no rigid rule of equality of taxation. It does not prohibit those inequalities which may result from singling out one particular class for taxation or exemption therefrom. Carmichael v. Southern Coal & Coke Co., 1937, 301 U.S. 495. Only if it appears that there

---

[2] See Section 8(a) of the Revised Organic Act of 1954, as amended by section 2 of the Act of August 28, 1958, Pub.L. 85–851, 72 Stat. 1094, 48 U.S.C.A. § 1574(a). In the report of the Committee on Interior and Insular Affairs of the Senate upon H.R. 12303 which became the Act of August 28, 1958, Pub.L. 85–851, it is said:

"Section 2 amends section 8(a) of the existing law under which Territorial legislature's power extends 'to all subjects of local application.' The amendment would make this read: 'to all rightful subjects of legislation.' In Granville-Smith v. Granville-Smith, 349 U.S. 1 (1955), the Supreme Court held that, at least with respect to persons who are not permanent residents of the islands, the phrase 'subjects of local application' has a meaning narrower than the phrase 'rightful subjects of legislation.' The latter language is used in the Organic Acts of Alaska and Hawaii.

"The Committee is of the opinion that the term 'rightful subjects of legislation' is well known in the law, and its application to the legislative power of the Territory should prevent the development of a jurisdictional no man's land where neither Federal nor Territorial law can apply. Under the language of section 2 of the bill, the legislative jurisdiction of the Territory would cover the ordinary area of sovereign legislative power as limited and circumscribed by the Revised Organic Act or the laws of the United States made applicable to the Virgin Islands. The Congress retains, of course, the power to disapprove, modify, and supersede any and all acts of the Territorial legislature." S. Rept. 2267, 85th Cong., p. 2, 3 U.S. Code Cong. & Admin. News, 85th Cong. 2d Sess. 1958, p. 4335.

is no rational basis for the classification so that it is patently arbitrary may it be set aside as unconstitutionally discriminatory. Singer Sewing Mach. Co. v. Brickell, 1914, 233 U.S. 304, 316; Flemming v. Nestor, 1960, 363 U.S. 603, 611. In Board of Education v. Illinois, 1906, 203 U.S. 553, the Supreme Court specifically upheld the power of the legislature of Illinois to grant a tax exemption to domestic corporations while denying it to foreign corporations. The court pointed out (p. 562) : "In considering this power, and classification in the exercise of this power, the [Illinois Supreme] court took into account the greater control and direction the State had over domestic than over foreign corporations."

In the present case we think that it was clearly not irrational or arbitrary for the Legislature in enacting its industrial incentive program to limit corporate tax exemptions and subsidies to those corporations which were organized under the laws of the Territory and which, by reason of their local organization and the control of the Territory over them, could be expected to remain as permanent participants in the economic life of the community. Foreign corporations, such as the plaintiff here, on the other hand, might be thought more likely to withdraw when the exemption period ended and thus deprive the Territory of the benefits which the exemptions and subsidies were intended to bring to its economy.

The judgment of the district court will be affirmed.